No. 3615.—SUCCESSION OF ALEXANDER NORTON—On opposition of JOHN OSBORN, Tutor.

_A·.commission merchant, who has received a lot of cotton on consignment from the tutor as the property of the minor, can not appropriate the proceeds thereof to the payment of a debt or obligation due him by the tutor. In such a case the proceeds of the sale of the cotton or its value, as shown at the time it was received, belonging to a minor may be recovered from the merchant, less the expenses incurred in shipping and selling it, even though the merchant show that the cotton was shipped in the individual name of the tutor, and that the tutor was indebted to him, on his own account, in an amount above the proceeds of the sale of the cotton._

APPEAL from the Second District Court, parish of Orleans. _Duvig-neaud_, J. _W. B. Hyman_, for appellant. _Miles Taylor_ and _James Brewer_, for appellees.·

LUDELING, C. J. The opponent claims that the succession is in-·debted to him as tutor in the sum of $12,062 50, with five per cent. interest per annum from fifth of April, 1867, being the value of thirty-·five bales of cotton alleged to have been shipped to him by said tutor as the property of the minor. The answer is that Norton had no knowledge of the fact that the property belonged to the minor; that he had agreed to furnish supplies and money to carry on a plantation ·cultivated in cotton by the said John Osborn, and that the cotton made should be shipped to him as a commission merchant; that he did make ·large advances to said Osborn; that he received thirty-five bales of cotton shipped to him in the name of John Osborn and marked J. O.; that he sold this cotton and accounted for it to Osborn.; that he rendered an account to Osborn in January, 1868, long after he had received and sold the cotton, which showed that Osborn owed him a balance of ·$2025 13 after crediting him with the proceeds of the cotton.

The evidence on the record shows that the cotton shipped belonged to the minor J. H. Osborn, and that the deceased, Norton, was inform-ed of the fact. Osborn swears that Norton knew this cotton belonged to the minor, as he had consented to go on a sequestration bond to get possession of it for the minor; and Fluke, a merchant, testified ·that he was present in Norton's office in the latter part of April or in May, 1867, when Osborn asked him if he had sold his child's cotton, and Norton replied that he had not yet, but that he would as soon as possible. Osborn further testifies that he often afterward called on

Norton to account for the same, but he never did.   It is further proved that the Osborn plantation failed to make any cotton in 1866.

Having received the cotton from the tutor as the property of the minor, the merchant could not appropriate the proceeds thereof to the payment of the obligations due to them by the tutor without his consent.   To do so would be a breach of confidence and violation of good faith.

It appears, however, that after the shipments of the cotton Osborn drew the following amounts from Norton, to wit:  $300, $200, $60. This amount, $560, should be deducted from the proceeds of the sale of the cotton.

The defendant alleges that he did not sell the cotton until January, 1868, and he does not explain why he kept the cotton so long before selling it.   As has already been observed, the tutor Osborn called on him in the latter part of April, or in May, 1867, to inquire if he had sold the cotton, and Mr. Norton promised to sell it as soon as possible. It is manifest, therefore, that Osborn wanted him to sell as soon as possible after the shipment of the cotton, which was early in April, 1867, and no satisfactory reason is given for failing to do so.   Nor is it proved that the cotton shipped was not sold until January, 1868—the proof is that some cotton marked J. O., which was damaged, was sold in January, 1868.   That does not by any means prove that it was the cotton shipped by Osborn in April, 1867.   Nor do the bills of lading prove conclusively that the cotton was damaged.   One bill states that fifteen bales were shipped " in good order and condition," and that they are to be delivered in the like good order and condition.   At the bottom of the bill is added " damaged, bad order, and not accountable for weights."   The other bill has added at the bottom thereof " condition and damage excepted."   These exceptions were not intended to prove that the cotton shipped was damaged, but only that the carrier was not willing to be held responsible for its condition.   Fluke, who saw the cotton before it was shipped, says he wanted to buy it—that he thinks it was worth forty cents per pound.   It was not damaged, if his statement be true, and there is nothing to contradict it, unless the evidence contained on the bills of lading contradict him.   If the cotton was damaged it was the duty of the merchant to have sold it as soon as possible, as it must have deteriorated in value every day; and he should have notified the shipper that it was damaged.

The evidence of several witnesses shows that the cotton was worth thirty-five cents per pound during the spring of 1867, and that the thirty-five bales weighed between four hundred and fifty and five hundred pounds per bale.   Adopting the lowest estimate of the weights at thirty-five cents per pound, the proceeds of the cotton would equal

$5512 50. The freights, charges and internal revenue tax and sums advanced to Osborn on the cotton mentioned above, will equal $1087 50, which must be deducted from the gross proceeds of the cotton.

It is therefore ordered and adjudged that the judgment of the lower court dismissing the opposition of J. Osborn, tutor, be avoided and that there be judgment in his favor against the estate of Alexander Norton, for the sum of four thousand four hundred and twenty-five dollars, with legal interest from judicial demand, costs to be paid in due course of administration, and that in all other respects the judgment of the lower court be affirmed, the costs of this appeal to be paid by the succession.